EARTHDATA INTERNATIONAL
OF NORTH CAROLINA,
L.L.C., plaintiff,

v.

STV INC. Defendant,

STV Inc., third-party plaintiff,

v.

Universal Communication Network—
Pennsylvania L.L.C., third-party
defendant.

CIV.A. No. 00–6232.

United States District Court,
E.D. Pennsylvania.

Aug. 11, 2001.

Kevin M. Toth, Reed Smith Show & McClay, Philadelphia, PA, for plaintiffs.

Douglas G. Worrall, Howard S. Stevens, Baltimore, MD, David L. Allebach, Jr., Peter J. Dolan, Yergly Daylor Allebach Scheffey Picardi, Pottstown, PA, for defendants.

## EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff EarthData International of North Carolina, Inc. ("EarthData"), the subcontractor, and defendant STV, Incorporated ("STV"), the contractor, entered into a subcontract agreement. The parties filed cross motions for summary judgment that require me to interpret the payment provision in their subcontract. Because I conclude that both parties have proffered reasonable interpretations of the disputed terms, I will deny both motions. *Background*

On April 23, 1999, STV entered into a contract with third-party defendant Universal Communication Networks—Pennsylvania, L.L.C. ("Universal"). STV agreed to provide architectural and engineering services for Universal's Fiber Optic Resource Sharing Project. On April 29, 1999, STV subcontracted with EarthData to provide the aerial mapping services component of the project. Universal concurred in the choice of EarthData to perform the subcontracted services.

STV admits that EarthData supplied the services requested and regularly issued invoices reflecting the work performed. EarthData submitted invoices totaling $215,749. To date STV has paid EarthData a total of $35,000. The dispute concerns STV's obligation to pay the outstanding balance of $180,749 that the parties agree is due EarthData.

Article IV of the subcontract sets forth the relevant terms of compensation:

A. The Consultant [STV] will compensate the Subconsultant [EarthData] for the satisfactory performance of the Scope of Services in Attachment A in accordance with the Prime Agreement and this Subcontract as may be modified in writing from time to time. If the Client [Universal] sets a specific retention rate in the Prime Agreement to be withheld from the Consultant, then the Consultant may retain a corresponding percentage from payments to the Subconsultant, where appropriate....

B. **The Subconsultant invoices approved for payment by the Client shall be paid to the Subconsultant when such payment is received by the Consultant.** Any item in the Subconsultant's invoice disallowed by the Client will not be paid by the Consultant. Payments made to the Subcontractor on fee and/or costs that are later disallowed by the Client shall either be withheld by the Consultant from subsequent payments to the Subconsultant or refunded promptly by the Subconsultant to the Consultant where such subsequent payments are insufficient to cover such disallowances.

Plaintiff's Complaint, Exhibit A, "Subcontract," Article IV—Compensation [emphasis added].

Universal has paid $25,000 of the $496,460 due STV under the Prime Agreement. On January 16, 2001, STV filed a third-party complaint against Universal, claiming that Universal is liable for all of EarthData's claims against STV.

*Discussion*

Both plaintiff EarthData and defendant STV have moved for summary judgment,[1] each asking that the court interpret the payment provision as a matter of law.

When a party files a cross motion, it claims that it alone is entitled to summary judgment and that, for the limited purpose of the disposition of its own motion, there are no outstanding issues of material fact. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir.2001)(quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968)). By making contradictory claims, the parties neither agree that the rejection of one claim justifies the other nor waive judicial determination of whether material fact issues exist. *See id.*

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The court should determine whether there are factual issues that merit a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate if no factual issues exist and the only issues before the court are legal. *See Sempier v. Johnson and Higgins*, 45 F.3d 724, 727 (3d Cir.1995).

To grant either party summary judgment on an issue of contract interpretation, a court must conclude that the disputed payment provision is subject to only one reasonable interpretation. *See Emerson Radio Corp. v. Orion Sales, Inc. et al.*, 253 F.3d 159, 163–64 (3d Cir.2001)(quoting *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999)). Each party believes that the provision unambiguously supports its position, and therefore suggests that disposition of this matter at summary judgment is ap-

1. When designating plaintiff, I am referring to EarthData; when designating defendant, I am referring to STV.

propriate. The question, therefore, is whether EarthData has advanced a reasonable alternative reading of the payment provision to that advanced by STV, and whether STV has advanced a reasonable alternative reading of the payment provision to that advanced by EarthData. *See Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir.1999).

A recent Third Circuit opinion sets forth a detailed analysis of contract interpretation and ambiguity under Pennsylvania law.[2] *Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.* 247 F.3d 79 (3d Cir. 2001).[3] In *Bohler–Uddeholm*, defendant-appellant Ellwood challenged the lower court's ruling that the purchase agreement in question was ambiguous as a matter of law. The parties disputed the meaning of the term "Buyer's Purchases" in the purchase agreement in question. Ellwood, the buyer, argued that the clause unambiguously referred to all of its purchases. Uddeholm, in response, argued that the clause was ambiguous, because it was not clear on its face if "Buyer's Purchases" was limited to purchases for the buyer's own use only. Uddeholm contended that evidence both contained within the agreement and extrinsic to it showed that the disputed language was so limited. The district court supported Uddeholm's position that the disputed clause was ambiguous, and thus sent the issue of interpretation to the jury. *See id.* at 91–92. In reviewing the district court's determination, the Third Circuit took the opportunity to examine the Pennsylvania law on contract interpretation which guided the

district court's threshold legal determination regarding ambiguity. Chief Judge Becker's analysis in *Bohler–Uddeholm* will guide me through the process of analyzing the case before me.

The provision at the heart of the dispute states that: "The [EarthData] invoices approved by [Universal] shall be paid to [EarthData] *when* such payment is received by [STV]." Subcontract, Article IV section B (emphasis added). STV argues that the plain language of that clause unambiguously conditions its payment to EarthData on 1) the approval of EarthData invoices by Universal, and 2) its receipt of payment from Universal. This straightforward reading of the clause is reasonable. However, EarthData counters with what essentially is a contention that the disputed clause is latently ambiguous.[4] EarthData suggests that the disputed terms of the subcontract can be read as a "pay when paid" provision of the kind routinely used in construction subcontracts. EarthData argues that the disputed clause refers only to the timing of STV's payment, not its obligation to pay. Under this "pay when paid" arrangement, EarthData argues, the contractor makes an unconditional promise to pay the subcontractor, but fixes the time of actual payment to the earlier of 1) the time when payment is received by the owner, or 2) a reasonable period of time.

The question before me is whether EarthData's claim that the disputed clause is latently ambiguous meets the standard that Chief Judge Becker explains in *Boh-*

---

**2.** The parties agree that Pennsylvania law applies to this case.

**3.** Chief Judge Becker's opinion in *Bohler–Uddeholm* was filed on April 11, 2001. As the parties filed their motions and responses prior to that date, they did not have the benefit of this thorough examination of the relevant principles of Pennsylvania contract law.

**4.** Plaintiff urges me to grant summary judgment in its favor based on an argument that at best establishes a latent ambiguity in the subcontract. If the clause is latently ambiguous, the appropriate step is to leave its interpretation to the finder of fact. Therefore, plaintiff's motion for summary judgment will be summarily dismissed.

*ler–Uddeholm.* It does meet that standard. EarthData supports its claim with extrinsic evidence properly intended to show that specific terms in the subcontract are ambiguous, and to bolster an ambiguity argument based on the parties' linguistic references, not on their expectations. *See Bohler–Uddeholm,* 247 F.3d at 93. That is, EarthData properly hangs its proffered extrinsic evidence on a "contractual hook." *See id.* at 96.

The contractual hook is there: the claim that the "when paid" language in the disputed provision creates a timing mechanism. EarthData can point to other language in the subcontract that supports its understanding of the disputed clause. Section A of the compensation provision provides that "[STV] will compensate [EarthData] for the satisfactory performance of the Scope of Services . . . in accordance with the Prime Agreement and this Subcontract as may be modified in writing from time to time." Subcontract, Article IV, section A. That language reasonably can be read to establish STV's obligation to compensate EarthData for satisfactory work, suggesting that the disputed language from section B merely establishes a time frame for those payments.

Also, if STV meant to condition its payment to EarthData on the approval of EarthData invoices by Universal and STV's receipt of payment from Universal, the payment clause would include words such as "condition," "if and only if," or "unless and until" that would unambiguously convey that intention. As written, the clause could establish a timing mechanism for payment. The reasonableness of EarthData's interpretation is strengthened by the fact that STV could have easily used a different term to convey the contradictory meaning. *See Bohler–Uddeholm,* 247 F.3d at 96.

To bolster its interpretation with other extrinsic evidence, EarthData refers to two articles discussing subcontracting practices in the construction industry, and in particular, to the common understanding of provisions similar to the one presently disputed. EarthData's proffered evidence distinguishes the type of language used here from a "pay if paid" provision that expressly conditions payment to the subcontractor on the receipt of funds from the owner.

What's more, EarthData's reading of the compensation clause produces a reasonable and sound result. Under its understanding of the contractual language, the subcontractor has a right to sue the contractor if the owner does not meet its obligations to the contractor within a reasonable time. Once the subcontractor sues the contractor for payment, the pressure of the lawsuit should prompt the contractor to sue the owner for payment, just as STV has done by filing a third-party complaint against Universal.

Earthdata has properly established a latent ambiguity in the compensation terms of the contract. Because the disputed language is subject to two reasonable and contradictory interpretations, the subcontract is legally ambiguous, and its interpretation must be left to the jury. Therefore I will also deny STV's motion for summary judgment.

**AND NOW,** this 11th day of August, 2001, it is **ORDERED** that:

1) Plaintiff EarthData International of North Carolina's Motion for Summary Judgment (filed as docket entry no. 4 in the District Court of Maryland prior to the transfer of this case to the Eastern District of Pennsylvania) is **DENIED;**

2) Cross Motion by Defendant STV, Inc. for Summary Judgment (docket entry no. 3, filed 1/16/01) is **DENIED.**

It is **FURTHER ORDERED** that the parties shall appear for a status conference on **September 12, 2001** at **4:30 p.m.** in chambers, room 7613, United States Courthouse, Philadelphia, Pennsylvania.